**PORTLAND MAIN OFFICE**
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1000
*www.usdoj.gov/usao/or*

Claire M. Fay
Assistant U.S. Attorney
Claire.Fay@usdoj.gov
(503) 727-1000
*Reply to Portland Office*

**EUGENE BRANCH**
405 E 8th Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771

**MEDFORD BRANCH**
310 West Sixth Street
Medford, Oregon 97501
(541) 776-3564



**U.S. DEPARTMENT OF JUSTICE**
United States Attorney's Office
District of Oregon
Scott Erik Asphaug
Acting United States Attorney

May 17, 2021

Jamie S. Kilburg, Esq.
Kauffman Kilberg LLC
1050 SW 6th Ave. Ste. 1414
Portland, OR 97204

21-cr- 00197 - HZ

Re:     *United States v. Melodie A. Eckland*, Case No. 3:~~20-cr-XXXXX-XX~~
        Revised Plea Agreement Letter

Dear Counsel:

1.      **Parties/Scope**: This plea agreement is between this United States Attorney's Office (USAO) and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This agreement does not apply to any charges other than those specifically mentioned herein.

2.      **Charges**: Defendant agrees to waive Indictment and plead guilty to Counts 1 through 4 of the Information, which charges the following: Count 1 – Wire Fraud, in violation of 18 U.S.C. § 1343; Count 2 – Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A; Count 3 – Making and Subscribing a False Federal Income Tax Return for the calendar year 2017, in violation of 26 U.S.C. § 7206(1); and Count 4 – Willful Failure to Collect or Pay Over Tax, in violation of 26 U.S.C. § 7202.

3.      **Penalties**: The maximum sentence for Count 1, Wire Fraud, is twenty (20) years' imprisonment, a fine of $250,000, three (3) years of supervised release, and a $100 fee assessment. The sentence for Count 2, Aggravated Identity Theft, is a mandatory two-year term of imprisonment that defendant must serve consecutively to any term of imprisonment imposed for Count 1, and a mandatory $100 fee assessment. The maximum penalty for Count 3, Making and Subscribing a False Federal Income Tax Return, is three [3] years imprisonment, a fine of $250,000, one [1] year of supervised release, and a $100 fee assessment. The maximum sentence for Count 4, Willful Failure to Collect or Pay Over Tax, is five (5) years imprisonment, a fine of $250,000, three (3) years of supervised release, and a $100 fee assessment. Defendant agrees to pay

the $400 fee assessment by the time of entry of guilty plea or explain to the Court why this cannot be done.

Defendant further stipulates to the forfeiture of the assets as set forth below. Defendant understands that if a mandatory minimum sentence is required, this may restrict the application of downward departures, adjustments, and variances in some cases.

4.   **Dismissal/No Prosecution**: The USAO will move at the time of sentencing to dismiss any remaining counts against defendant. The USAO further agrees not to bring additional charges against defendant in the District of Oregon arising out of this investigation, known to the USAO at the time of this agreement.

5.   **Elements**: In order for defendant to be found guilty of Counts 1 through 4 of the Information, the government must prove the following elements beyond a reasonable doubt:

**Count 1 – Wire Fraud, in violation of 18 U.S.C. § 1343:**

a.   The defendant knowingly devised or intended to devise a material scheme or artifice to defraud, or to obtain money by means of false or fraudulent pretenses, representations or promises, or omissions of facts;

b.   The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

c.   The defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

d.   The defendant used or caused the use of interstate wires to carry out or attempt to carry out an essential part of the scheme.

**Count 2 – Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A:**

a.   The defendant knowingly possessed or used without legal authority a means of identification of another person;

b.   The defendant knew that the means of identification belonged to a real person; the government need not establish that the means of identification of another person was stolen; and

    c.    The defendant did so during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c) or § 2332b (g)(5)(B), which includes 18 U.S.C. §1343 (Wire Fraud) and 1344 (Bank Fraud).

Although not charged in the Information, the elements of the underlying offense of Bank Fraud, in violation of 18 U.S.C. § 1344, are:

    a.    Defendant knowingly executed or attempted to execute a material scheme to defraud a financial institution, or obtained the money, funds, credits, assets, securities, or other property owned by or under the custody or control of the financial institution by means of false or fraudulent pretenses, representations or promises; and

    b.    The financial institution was federally insured at the time the defendant executed or attempted to execute the material scheme to defraud, or fraudulently obtained money or property under the financial institution's custody or control.

**Count 3 – Filing a False Federal Income Tax Return, in violation of 26 U.S.C. § 7206(1):**

    a.    The defendant made and subscribed a return, statement, or other document which was false as to a material matter;

    b.    The return, statement, or other document contained a written declaration that it was made under the penalties of perjury;

    c.    The defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and

    d.    The defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law.

**Count 4 – Willful Failure to Collect or Pay Over Tax, in violation of 26 U.S.C. § 7202:**

    a.    Defendant had a duty to collect, account for, and pay over a tax;

    b.    Defendant failed to collect, truthfully account for, or pay over the tax; and

    c.    Defendant acted willfully.

Defendant admits the elements of the offenses alleged in Counts 1 through 4 of the Information.

6.   **Factual Basis**:  The defendant admits that the following is an accurate, though non-exhaustive statement of the offense conduct:

From at least 2011 to April 2018, defendant Eckland, a resident of Oregon, was the bookkeeper for an adoption agency owned by Adult Victims 1 and 2 (hereinafter AV1 and AV2). The adoption agency, which was incorporated in 1993, is a non-profit adoption and surrogacy agency operating in Oregon and Washington.  Defendant's duties as the bookkeeper included maintaining the books and records of the agency, doing the payroll, and filing employment tax returns of the adoption agency and paying the quarterly employment taxes to the IRS.  Defendant provided financial statements of the adoption agency to the Board of Directors, but did not have signatory authority over the business bank account.

Beginning in or about 2011, and continuing through April 2018, Eckland devised a material scheme to defraud and to obtain money from the adoption agency, AV1 and AV2, by materially false and fraudulent pretenses, representations, and promises.  As part of the material scheme to defraud, Eckland stole funds directly from the adoption agency's business bank account at Premier Community Bank by making unauthorized wire transfers to her personal bank account at U.S. Bank, and by writing unauthorized checks to herself.  Defendant also transferred unauthorized funds in the form of bonuses from the adoption agency's bank account to her own bank account.

As part of the material scheme to defraud, defendant Eckland maintained two separate QuickBooks files for the adoption agency.  One version showed the business books as they should have been maintained.  Defendant used this file to provide financial statements to the Board of Directors and to the business accountants.  A separate version of the QuickBooks files that Eckland created showed the true payments she made to herself over the course of her employment.  In the second set of QuickBooks, defendant most frequently categorized the excess payments she made to herself as "Misc II."  Defendant also used an account in QuickBooks that she labeled "Bonus" to classify additional payments to herself.  As part of the material scheme to defraud, between December 2017 and March 2018, defendant Eckland also wrote approximately $22,500 in checks to herself on the adoption agency bank account at Premier Community Bank. Defendant forged the signature of adoption agency owner AV1 on the checks, deposited or cashed them, and took the money for her personal use.  Premier Community Bank suffered a loss of $16,000, while the adoption agency lost $6,500 on these unauthorized forged checks.

Total losses from the "Misc II" and "Bonus" Quickbooks accounts and the defendant's use of the forged checks from the adoption agency bank account totaled more than $1,063,000.

As part of the material scheme to defraud, defendant Eckland also made unauthorized charges of approximately $32,500 to the PayPal credit card account of adoption agency owner AV2. Eckland had transferred the funds to her personal bank account.  AV2 contested the charges, and PayPal wrote off these charges and took the $32,500 loss.

As part of the material scheme to defraud, and to conceal her embezzlement from the owners of the adoption agency, defendant applied for loans from at least five lending agencies in 2016 and 2017, using the name of the adoption agency without AV1 or AV2's approval. Defendant made unauthorized pledges of the receivables from the adoption agency to secure these loans. Defendant altered the records of the adoption agency, making it appear that she was the owner of the agency and authorized to enter into loan agreements. Defendant sent these false records to the lenders via interstate wire communications such as emails. Defendant used the funds from these loans to cover the amounts of money she had stolen from the adoption agency's bank accounts.

As part of the material scheme to defraud, and to further conceal her embezzlement, defendant stole funds from the bank account opened at Umpqua Bank on behalf of the estate of her deceased brother-in-law. In December 2015, defendant's brother-in-law passed away, and defendant's husband was made the trustee and executor of the estate. Defendant Eckland assisted her husband with these duties. As part of his duties, defendant's husband was tasked with selling the assets of his deceased brother, paying estate bills, and preserving the remaining funds in an estate bank account for the benefit of his brother's children, AV3 and AV4. The only authorized signor on the estate bank account was defendant's husband. Defendant Eckland had access to the estate bank account, and embezzled funds from the account by making unauthorized transfers of funds to herself via electronic funds transfers, by altering hard copies of checks, and by forging her husband's signature on unauthorized hard copies of checks and cashing or depositing the checks. Eckland used some of the funds from the estate account to send money to and from the adoption agency's bank account in an effort to conceal her theft from the adoption agency and its owners. Defendant stole approximately $123,900 from the estate bank account at Umpqua Bank.

As part of her duties at the adoption agency, defendant Eckland was in charge of preparing and filing the quarterly employment tax returns of the adoption agency with the IRS. Internal Revenue Service records show that beginning in the second quarter of 2016, and lasting through the fourth quarter of 2017, Eckland willfully ceased making the employment tax deposits for the adoption agency and willfully stopped filing the employment tax returns (Forms 941). As a result of Eckland's willful conduct and her theft of funds, the adoption agency owes the IRS $94,361.04 in past due employment taxes (excluding penalties and interest) for the second quarter of 2016 through the fourth quarter of 2017.

Internal Revenue Service records indicate that defendant Eckland willfully filed joint federal income tax returns with her husband for the calendar years 2013, 2014, and 2017. Eckland willfully signed these returns under penalties of perjury. IRS records reflect that defendant did not report any of the embezzled funds on her federal income tax returns for the calendar years 2013, 2014, and 2017. Defendant filed a 2015 and 2016 federal income tax return and reported $226,500 in 2015 and $225,000 in 2016 as "Other Income" but failed to pay the

taxes due. In order to conceal her income, defendant willfully did the following: prepared and maintained false business books and records of the adoption agency; diverted funds from the bank account of the adoption agency to her personal account; made unauthorized applications for loans in the name of a nominee, i.e. the adoption agency; made unauthorized withdrawals from the business bank account by using the identity of another person, i.e. AV1; made unauthorized purchases on a business credit card using the name of another person, i.e. AV2; and made unauthorized withdrawals from the estate bank account by using the name of the account holder, i.e. her husband. The amount of unreported income and additional tax due and owing with respect to defendant's personal income tax returns is reflected in the chart below:

| Calendar Year | Unreported Income | Additional Tax Due and Owing |
| --- | --- | --- |
| 2013 | $227,050 | $64,724 |
| 2014 | $108,615 | $26,465 |
| 2015 | $0 | $81,263 |
| 2016 | $60,000 | $91,258 |
| 2017 | $279,676 | $81,772 |
| TOTAL | $675,341 | $345,482 |

The parties agree that for sentencing purposes, the amount of the loss defendant Eckland caused the adoption agency, the adoption agency owners AV1, AV2, Paypal, the estate of her brother-in-law, and the IRS exceeds $1,565,000. The parties agree that restitution owed to the victims of the offenses may be higher than the loss for sentencing purposes.

7. **Sentencing Factors**: The parties agree that the Court must first determine the applicable advisory guideline range, then determine a reasonable sentence considering that range and the factors listed in 18 U.S.C. § 3553(a). Where the parties agree that sentencing factors apply, such agreement constitutes sufficient proof to satisfy the applicable evidentiary standard.

8. **Loss Amount**: The defendant and the government agree that she caused total losses of more than $1,500,000 but less than $3,500,000.

9. **Relevant Conduct**: The parties agree that the following USSG provisions apply:

    a.     USSG § 2B1.1(a)(1) – defendant's base offense level is 7;

    b.     USSG § 2B1.1(b)(1)(I) – because the loss is more than $1,500,000 but less than $3,500,000, a 16-level increase is warranted;

    c.     USSG § 2B1.1(b)(9)(A) – because the offense involved the defendant's misrepresentation that she acted on behalf of a charitable organization, a 2-level increase is warranted;

      d.     USSG § 2B1.1(b)(10)(C) – because the offense involved sophisticated means, a 2-level increase is warranted;

      e.     USSG § 3B1.3 – because the offense involved an abuse of a position of trust, a 2-level increase is warranted.

There is no agreement between the parties with respect to criminal history.

10.    **Acceptance of Responsibility**:  Defendant must demonstrate to the Court that defendant fully admits and accepts responsibility under USSG § 3E1.1 for defendant's unlawful conduct in this case.  If defendant does so, the USAO will recommend a three-level reduction in defendant's offense level (two levels if defendant's offense level is less than sixteen).  The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to obstruct justice as explained in USSG § 3C1.1, or acts inconsistently with acceptance of responsibility as explained in USSG § 3E1.1.

11.    **Sentencing Recommendation**:  As long as defendant demonstrates an acceptance of responsibility as explained above, the USAO will recommend the low end of the applicable guideline range for Counts 1, 3 and 4, and that defendant serve the mandatory 24-month sentence for Count 2 consecutively to any term of imprisonment imposed on Count 1.

12.    **Additional Departures, Adjustments, or Variances**:  The USAO agrees to seek a two-level downward adjustment to the advisory sentencing guideline range under 18 U.S.C. § 3553 if: (1) defendant provides the government with copies of the original 2015 and 2016 individual income tax returns and the amended 2013, 2014 and 2017 individual income tax returns she filed with the Internal Revenue Service after the criminal investigation began, and (2) she meet with the IRS to determine her legal obligation to file tax returns and pay taxes and sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of that portion of the tax that she agrees to pay as restitution.  In addition, the USAO agrees to an additional two-level downward adjustment to the advisory sentencing guideline range under the factors listed in 18 U.S.C. § 3553.  The total downward adjustment the USAO will agree to pursuant to 18 U.S.C. § 3553 is four levels.

Defendant reserves the right to seek a downward departure, adjustment, or variance from the applicable sentencing guideline range determined by the Court for Counts 1, 3 and 4, and understands that the government reserves its right to oppose such a request.  The basis for defendant's request for departure, adjustment, or variance shall be limited to 18 U.S.C. § 3553.

Defendant understands that the sentence for Count 2, Aggravated Identity Theft (18 U.S.C. § 1028A), is a mandatory two-year term of imprisonment that must be served consecutively to any term of imprisonment imposed on Count 1.  Defendant further understands

that the mandatory minimum sentence may restrict the application of downward departures, adjustments, and variances in some cases.

Defendant agrees that, should defendant seek a downward departure, adjustment, or variance from the applicable guideline range determined by the Court and Probation Office, defendant will provide the government with notice of: (1) the factual basis for such request; (2) any evidence defendant intends to introduce or rely upon at the sentencing hearing; and (3) any witnesses, including expert witnesses, defendant intends to call or rely upon at the sentencing hearing. Such notice must be provided to the government no later than the Wednesday prior to the week during which the sentencing hearing is scheduled. Defendant agrees that if defendant fails to comply with this notice requirement, defendant will not oppose a government motion for a postponement of the sentencing hearing.

13. **Waiver of Appeal/Post-Conviction Relief**: Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that: (1) the sentence imposed exceeds the statutory maximum, or (2) the Court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of Guidelines Chapters 4 or 5K, or (3) the Court exercises its discretion under 18 U.S.C. § 3553(a) to impose a sentence which exceeds the advisory guideline sentencing range as determined by the Court. Should defendant seek an appeal, despite this waiver, the USAO may take any position on any issue on appeal. Defendant also waives the right to file any collateral attack, including a motion under 28 U.S.C. § 2255, challenging any aspect of the conviction or sentence on any grounds, except on grounds of ineffective assistance of counsel, and except as provided in Fed. R. Crim. P. 33 and 18 U.S.C. § 3582(c)(2). In the event that any of defendant's convictions under this agreement are vacated, the government may reinstate and/or file any other charges, and may take any position at a resentencing hearing, notwithstanding any other provision in this agreement.

14. **Court Not Bound**: The Court is not bound by the recommendations of the parties or of the presentence report (PSR) writer. Because this agreement is made under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, defendant may not withdraw any guilty plea or rescind this plea agreement if the Court does not follow the agreements or recommendations of the parties.

15. **Full Disclosure/Reservation of Rights**: The USAO will fully inform the PSR writer and the Court of the facts and law related to defendant's case. Except as set forth in this agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

16. **Breach of Plea Agreement**: If defendant breaches the terms of this agreement or commits any new criminal offenses between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea.

If defendant believes that the government has breached the plea agreement, defendant must raise any such claim before the district court, either prior to or at sentencing. If defendant fails to raise a breach claim in district court, defendant has waived any such claim and is precluded from raising a breach claim for the first time on appeal.

17. **Restitution**: Defendant agrees fully to disclose all assets in which defendant has any interest or over which defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party. Defendant agrees to truthfully complete the Financial Disclosure Statement provided herein by the earlier of fourteen days from defendant's signature on this plea agreement or the date of defendant's entry of a guilty plea, sign it under penalty of perjury, and provide it to both the USAO and the United States Probation Office. Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances.

Defendant expressly authorizes the USAO to obtain a credit report on defendant. Defendant agrees to provide waivers, consents, or releases requested by the USAO to access records to verify the financial information. Defendant also authorizes the USAO to inspect and copy all financial documents and information held by the U.S. Probation Office.

The parties agree that defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute defendant's failure to accept responsibility under USSG § 3E1.1.

A. **Transfer of Assets:** Defendant agrees to notify the Financial Litigation Unit of the USAO before defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

B. **Restitution:** The Court shall order restitution to each victim in the full amount of each victim's losses as determined by the Court. The total amount of restitution due to the victims in this case will be at least **$1,565,248.48 and less than $2.5 million**. The government will provide the names and losses of each victim to the Court and to the U.S. Probation Office prior to sentencing. Defendant agrees to pay restitution for all losses caused by defendant's conduct, regardless of whether counts of the Information dealing with such losses will be dismissed as part of this plea agreement, or whether there are counts that are uncharged.

Defendant understands and agrees that the total amount of any monetary judgment that the Court orders defendant to pay will be due and payable. Defendant further understands and agrees that pursuant to 18 U.S.C. § 3614, defendant may be resentenced to any sentence which might have originally been imposed if the court determines that defendant has knowingly and willfully refused to pay a fine or restitution as ordered or has failed to make sufficient bona fide

efforts to pay a fine or restitution. Additionally, defendant understands and agrees that the government may enforce collection of any fine or restitution imposed in this case pursuant to 18 U.S.C. §§ 3572, 3613, and 3664(m), notwithstanding any initial or subsequently modified payment schedule set by the court. Defendant understands that any monetary debt defendant owes related to this matter may be included in the Treasury Offset Program to potentially offset defendant's federal retirement benefits, tax refunds, and other federal benefits.

Pursuant to 18 U.S.C. § 3612(b)(1)(F), defendant understands and agrees that until a fine or restitution order is paid in full, defendant must notify the USAO of any change in the mailing address or residence address within 30 days of the change. Further, pursuant to 18 U.S.C. § 3664(k), defendant shall notify the Court and the USAO immediately of any material change in defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts, or any other acquisition of assets or money.

18. **Forfeiture Terms**:

A. **Assets and Authority**: By signing this agreement, defendant knowingly and voluntarily forfeits all right, title, and interest in and to **$1,565,248.48** pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 2461(c), which defendant admits represents proceeds defendant personally obtained, directly or indirectly, as a result of defendant's criminal activity set forth in Count 1 of the Information.

B. **No Alteration or Satisfaction**: Defendant knowingly and voluntarily waives the right to a jury trial on the forfeiture of assets. Defendant knowingly and voluntarily waives all constitutional, legal, and equitable defenses to the forfeiture of this money judgment, including any claim or defense under the Eighth Amendment to the United States Constitution, and any rights under Rule 32.2 of the Federal Rules of Criminal Procedure. Defendant further agrees forfeiture of defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon defendant in addition to forfeiture. Defendant agrees that forfeiture of substitute assets as authorized pursuant to 21 U.S.C. § 853(p) shall not be deemed an alteration of defendant's sentence.

19. **Criminal Tax Loss and Civil Tax Proceedings**: The defendant understands the criminal tax loss amount does not include all the applicable statutory penalties and interest for which the defendant may be liable under the Internal Revenue Code and that the IRS may assess her penalties and interest in addition to the criminal tax loss amount. The defendant understands and agrees that this plea agreement does not prohibit the United States or the Internal Revenue Service from pursuing any civil or administrative proceeding against the defendant. The defendant agrees the USAO and Internal Revenue Service Criminal Investigation Division may disclose the criminal file in this case to any civil component of the Internal Revenue Service for assessment or collection of any taxes the defendant may owe. The defendant waives any rights she may have

pursuant to 26 U.S.C. §§ 6103 and 7213 and Fed. R. Crim. P. 6(e), regarding privacy/secrecy of tax returns, return information, and grand jury material. The defendant does not waive, and retains, any right she may have to contest civilly or administratively any findings, assessments, or collection activity by the Internal Revenue Service.

20.   **Tax Compliance and Special Conditions of Supervised Release:**  Defendant agrees to special conditions of supervised release requiring her to file all appropriate tax returns and/or amended tax returns for the period January 1, 2011 through December 31, 2017, and pay all taxes, penalties, and interest due and owing. Defendant further agrees to the special conditions that:

  a.   She meet with the IRS to determine her legal obligation to file tax returns and pay taxes and to sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of that portion of the tax that she agrees to pay as restitution, including IRS Form 8821, "Tax Information Authorization;"

  b.   She not file any claim for refund of taxes represented by any amount of restitution paid pursuant to this agreement;

  c.   This agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time periods covered by this agreement or any other time period;

  d.   Unless the Director of the Administrative Office of the United States Court directs defendant otherwise, all payments made pursuant to the Court's restitution order are to be sent only to the Clerk of the Court at the following address: Clerk, United States District Court, District of Oregon, 1000 SW Third Avenue, Portland, Oregon 97204;

  e.   She provide with each payment to the Clerk of the Court made pursuant to the Court's restitution order:
    1.   Her name and Social Security number;
    2.   The District Court docket number assigned to this case;
    3.   The periods for which restitution has been ordered; and
    4.   A statement that the payment is being submitted pursuant to the District Court's restitution order;

     f.     She include a request that the Clerk of the Court send the information, along with defendant's payments, to the appropriate IRS office;

     g.     She send a notice of any payments made pursuant to the agreement, including the information listed in the previous paragraph, to the IRS at the following address: IRS -RACS Attn: Mail Stop 6261, Restitution, 333 W. Pershing Ave, Kansas City, MO 64108.

     h.     She is not entitled to credit with the IRS for any payment sent to an incorrect address or accompanied by incomplete or inaccurate information, unless and until any payment is actually received by the IRS and identified by it as pertaining to his particular liability.

21.    **Memorialization of Agreement**:  No promises, agreements, or conditions other than those set forth in this agreement will be effective unless memorialized in writing and signed by all parties listed below or confirmed on the record before the Court.  If defendant accepts this offer, please sign and attach the original of this letter to the Petition to Enter Plea.

22.    **Deadline**:  This plea offer expires if not accepted by May 20, 2021, at 5:00 p.m.

                Sincerely,

                SCOTT E. ASPHAUG
                Acting United States Attorney

                */s/ Claire M. Fay*
                CLAIRE M. FAY
                Assistant United States Attorney

I have carefully reviewed every part of this agreement with my attorney. I understand and voluntarily agree to its terms. I expressly waive my rights to appeal as outlined in this agreement. I wish to plead guilty because, in fact, I am guilty.

5/27/21
Date

Defendant

I represent the defendant as legal counsel. I have carefully reviewed every part of this agreement with defendant. To my knowledge, defendant's decisions to make this agreement and to plead guilty are informed and voluntary ones.

5/27/2021
Date

Attorney for Defendant